# Supreme Court of the Navajo Nation

**Joe Naize, Appellant,**

v.

**Julia Naize, Appellee.**
**Decided May 28, 1997**

## OPINION

Before AUSTIN, Acting Chief Justice, CADMAN and R. A. BEGAYE* (sitting by designation), Associate Justices.

Lee R. Belone, Esq., Window Rock, Navajo Nation (Arizona), for the Appellant; and John H. Yazzie, Esq., Kayenta, Navajo Nation (Arizona), for the Appellee.

Opinion delivered by CADMAN, Associate Justice.

Two issues are the subject of this opinion: 1) whether the Chinle Family Court abused its discretion when it awarded spousal maintenance to the Appellee; and 2) whether the Chinle Family Court abused its discretion when it awarded attorney's fees to the Appellee. Five other assignments of error were decided in our March 7, 1997 memorandum decision. We affirm the family court's decisions on spousal maintenance and attorney's fees.

I

The parties began living together in 1969 and obtained a marriage license in October, 1974. Their only child was born in 1977 and is over the age of eighteen. The child attends post-secondary school and resides with the Appellee, Julia Naize, when not in school. The child has chronic skin problems.

The final divorce decree was filed on March 22, 1996. The court awarded the Appellee the following: a homesite lease; most of the home furnishings (beds, dressers, lamps, tables, chairs, couch, television set, wood stove, stereo, washing machine and dryer, and air conditioner); silversmithing tools; assorted tools and boxes; livestock racks; a flatbed trailer; a 500-gallon water tank; an automobile engine; a camper shell; and a chainsaw. The Appellant received a bed, lazy-boy chair, locksmithing tools, television set, washing machine and dryer, and a Native American Church drum. The community debts were fairly divided.

The court awarded the Appellee $200.00 per month in spousal maintenance for three years after finding that she was 58 years of age, uneducated, in poor health,

had two medical operations, was in constant need of medical attention, and needed reliable transportation. The Appellant was further ordered to deliver a truckload of firewood and coal to the Appellee during the months of November, December, January and February of each year, beginning the fourth year, for an indefinite time period.

At the final hearing, the Appellee introduced the following evidence: she has tuberculosis related health problems; she has a foot problem that needs special shoes; she cannot walk or stand without pain; she needs assistance to get upright; she has chronic back pain and pain from two surgeries; she uses traditional Navajo healing ceremonies; she is not employable; she cannot weave rugs anymore; she stayed home to raise her son while her husband worked; and she helped her husband with many tasks during their marriage. The Appellant did not controvert any of this evidence.

On her request for attorney's fees, the Appellee introduced evidence of her unemployability, inability of self representation due to illiteracy, necessity of borrowing money to hire counsel, and her preliminary opposition to the divorce petition. Again, none of this evidence was contradicted. The family court found a special set of circumstances from the evidence and awarded the Appellee her attorney's fees of $675.00.

## II

### Spousal Maintenance

### A

A review of this Court's past spousal maintenance decisions is relevant to the issue before us. In the first reported decision, *Johnson v. Johnson*, 3 Nav. R. 9 (1980), the Court was asked to pinpoint the source of the Navajo Nation courts' authority to award spousal maintenance. After failing to find a Navajo Nation statute specifically authorizing it, the Court relied on the choice of law statute to rule that "nothing in Navajo tradition or custom would prohibit [the Navajo Nation courts] from applying New Mexico law [or state law] pursuant to 7 NTC § 204" to award alimony. *Id.* at 11. Subsequently, in *Charley v. Charley*, 3 Nav. R. 30 (1980), the Court was asked for the appropriate standard applicable to the issues of whether spousal maintenance should be awarded and, if so, its amount. Again, the Court looked outside our jurisdiction to hold that the law of the state "where the spouse and children reside will determine the standard for alimony until the Tribal Council or this Court sets other standards." *Id.* at 31. New Mexico guidelines, six in all, were applied to the facts of that case. *Id.* In the latest decision, we "set additional guidelines" for the Navajo Nation courts to apply in "a fair and reasonable manner" when awarding spousal maintenance. *Sells v. Sells*, 5 Nav. R. 104, 106 (1986). We retained *Charley's* guidelines, but overruled its holding that the law of the state in which the spouse and children reside should determine our spousal maintenance

issues. *Id.* at 106-107. The Court foresaw confusion and forum shopping as the laws of three different states could be applied to spousal maintenance issues in the Navajo Nation. *Id.* at 108. The Court underscored the need for "uniformity, consistency and predictability in developing Navajo law." *Id.*

The parties before us apparently agree the guidelines in *Sells* give our courts adequate direction when addressing spousal maintenance issues. Questions, however, were directed at the authority of the Navajo Nation courts to award spousal maintenance following the Navajo Nation Council's 1985 revision of the choice of law statute, 7 N.N.C. § 204, this Court's overruling of the *Charley* holding, *Sells*, 5 Nav. R. at 107, and this Court's statement in *Sells* that "[s]tate laws do not control domestic relations within our jurisdiction." *Id.* We address these below.

At the outset, we establish that the Navajo Nation courts, serving as courts of equity, have the general authority to award alimony, particularly in cases where a divorced spouse is "not able to provide for her [or his] own maintenance and that of her [or his] remaining minor children without some sort of financial aid from" the former spouse. *Charley*, 3 Nav. R. at 10-11. This power exists independent of any Navajo Nation statute on the subject and is justified by the Navajo People's traditional teachings admonishing not to "throw one's family away." Public policy also supports the courts' exercise of this power. The general lack of economic and employment opportunities on the Navajo Nation, the Nation's lack of a well educated and skilled labor force, and the Nation's high divorce rate, which leaves children dependent on one spouse or relatives, all underlie the many requests to the courts for spousal maintenance.

The Navajo Nation courts' authority to award spousal maintenance was first challenged in *Charley*: "Whether the Courts of the Navajo Nation are empowered to award alimony." 3 Nav. R. at 9. The Court did not find a Navajo Nation statute granting our courts such authority and that is still the case today. *Id.* at 10. While section 204 authorized use of Navajo common law, the Court in *Charley* apparently did not choose that route. Instead, it went directly to state spousal maintenance law, and found it applicable as long as Navajo custom or tradition did not prohibit its use in a Navajo Nation case. *Id.* at 10-11. While we do not fault the Court's choice, we believe Navajo common law does authorize our courts to award spousal maintenance.

The Navajo People's segmentary lineage system (clanship system) is the foundation of Navajo Nation domestic relations law. The system itself is law. Traditional Navajo society is matrilineal and matrilocal, which obligates a man upon marriage to move to his wife's residence. The property the couple bring to the marriage mingle and through their joint labors create a stable and permanent home for themselves and their children. The wife's immediate and extended family benefit directly and indirectly, in numerous ways, from the marriage.

If the marriage does not survive, customary law directs the man to leave with his personal possessions (including his horse and riding gear, clothes, and religious items) and the rest of the marital property stays with the wife and children

at their residence for their support and maintenance. Whatever gains the marital property generate goes to support the wife and children and to a lesser extent the wife's close relatives. This longstanding customary law is akin to modern spousal maintenance. Therefore, we conclude that Navajo common law gives the Navajo Nation courts' authority to award spousal maintenance in appropriate cases even in the absence of statutory law on the subject. Our laws require our courts to apply Navajo common law equally to both spouses when addressing spousal maintenance issues.

In the Judicial Reform Act of 1985, the Council made a minor change to section 204(c) (the choice of law statute). Pre-1985 language said the Navajo Nation courts "shall" apply state law to matters not covered by Navajo common law, Navajo Nation statutes, or applicable federal law. The 1985 amendment changed the word "shall" to "may" and thereby made application of state law discretionary with the Navajo Nation courts. *Sells*, 5 Nav. R. at 108. We conclude that the 1985 revision did not overrule or alter *Charley's* reliance on New Mexico law to find a grant of authority to the Navajo Nation courts.

Finally, this Court's statement in *Sells*, *id.* at 107, that "[s]tate laws do not control domestic relations within" the Navajo Nation was made in the context of eliminating the need to resort to three separate state standards on spousal maintenance. It did not overrule *Charley's* use of state law as authority to award spousal maintenance. Nonetheless, as stated previously, Navajo common law grants our courts power to award spousal maintenance.

B

The Appellant argues that the Chinle Family Court abused its discretion when it awarded to the Appellee spousal maintenance. The Appellant essentially argues that the Appellee's evidence does not satisfy any of the factors set forth in *Sells*, *id.* at 106. We disagree. The Appellee's evidence in support of her request is not controverted, satisfies *Sells'* guidelines, and strongly shows a need for an award of spousal maintenance.

The Appellee is a 58 year-old elderly Navajo lady who was married to the Appellant for 22 years. She is uneducated and unemployable. Poor health and illiteracy make her a poor prospect for vocational training or other training to acquire meaningful employment skills. Her poor health prevents her from weaving rugs or raising livestock to support herself and her son. She earns no wages and chances that she will acquire capital assets are nonexistent. She is in constant need of medical attention. She had two operations, cannot move freely without pain, has tuberculosis related health problems, has a foot disorder which requires special needs, and needs funds for traditional ceremonies. She contributed to the marriage, as wife, mother, and homemaker, while the Appellant worked outside the home. The parties' only child lives with her and needs her support. She needs transportation to get medical care. Under these facts, we cannot find a better applicant for an award of spousal maintenance.

A party seeking spousal maintenance should not have to satisfy every element in *Sells, id.*, before a court grants his or her request. Just enough evidence to tip the scale in favor of an award of spousal maintenance is all we require. The trial court has discretion to decide what is sufficient evidence and we find no abuse of discretion here. We affirm the family court's award of spousal maintenance to the Appellee.

The Appellant does not dispute the amount of the spousal maintenance award and we do not address it. The time period that the Appellant is obligated to make monetary payments is also not an issue. The only other matter is the family court's order that the Appellant must supply the Appellee with wood and coal for an indefinite time period. We reverse this part of the spousal maintenance award because it violates that Navajo common law rule which requires finality in Navajo divorces. Harmony in the community and in the lives of the divorced spouses should be restored quickly following a divorce. *Apache v. Republic National Life Insurance Co.*, 3 Nav. R. 250, 254 (Window Rock D. Ct. 1982). We rely on the teachings of *Apache*:

> There was a principle of finality in Navajo customary divorce, and the principle of restoring harmony in the community by quickly and finally breaking ties so the community can soon return to normal is one which is commonsense. To permit a former spouse to keep such ties that she or he may be said to be lurking behind the hogan waiting to take a portion of the corn harvest is unthinkable, since each spouse returns to his or her own family after the divorce. Each former spouse should return home after making the break and disturb others no more.

*Id.* at 254. Also, it is not fair to require the Appellant to supply wood and coal for life, while he is obligated to pay spousal maintenance for only three years.

## III

### Attorney's Fees

The Navajo Nation courts are permitted to award reasonable attorney's fees to a party to a divorce action after assessing the parties' financial resources. *John v. Herrick*, 5 Nav. R. 129, 131-132 (1987); *Morgan v. Morgan*, 5 Nav. R. 64, 65 (1985). The issues of whether an award should be made and its amount are matters best left to the discretion of the trial court. *Morgan*, 5 Nav. R. at 65. In this case, the family court found sufficient facts which justified an award of attorney's fees: the Appellee borrowed money to retain an attorney to defend against the petition; the Appellee is unemployed and unemployable for different reasons; the Appellee is illiterate and therefore unable to represent herself; initially, the Appellee did not want a divorce; and the Appellant has adequate resources to pay the Appellee's attorney's fees. We do not find an abuse of discretion under these facts. The family court's award of attorney's fees to the Appellee is affirmed.

## IV

### Mandate

The Chinle Family Court is directed to carry out proceedings and enter orders consistent with this opinion and this Court's memorandum decision filed on March 7, 1997. This case is final for purposes of appellate litigation.